642 A.2d 401

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. STANLEY TUCKER, JR., DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued March 1, 1994—Decided June 22, 1994.

*Teresa A. Blair,* Deputy Attorney General, argued the cause for appellant and cross-respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Susan L. Reisner,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal arises from an encounter between police and a young man sitting on a curb who fled after seeing the approach of a marked police car. The patrolling officers pursued the young man and radioed for assistance. A second police car on a nearby street responded to the call and traveled toward defendant. Defendant, on seeing the second car, reversed course, and was caught by the initial officers. He dropped a packet, which was shown to contain cocaine. Following an unsuccessful motion to suppress the evidence obtained in the encounter, defendant pleaded guilty to third-degree possession of narcotics with intent to distribute, in violation of *N.J.S.A.* 2C:35–5(a)(1) and –5(b)(3), and the trial court sentenced him to a three-year period of probation conditioned on successful completion of his education at Mercer County Community College, continuation of employment that does not interfere with his attendance at college, and negative drug-testing results.

Defendant appealed the suppression ruling, and the Appellate Division reversed. From that determination the State appeals, raising three issues: First, did police seize defendant within the meaning of the Fourth Amendment? Second, did they have sufficient grounds to seize the defendant? Third, if the answer to that second question is no, did defendant nonetheless abandon the drugs?

I

The parties have stipulated to the facts. The issues are presented in somewhat of a vacuum because we sense that the record does not disclose all of the facts that the officers possessed at the time of the encounter. For purposes of this appeal, we will decide the case on the stipulated statement set forth in the State's letter brief in response to defendant's motion to suppress. The stipulation establishes that on October 10, 1989, Trenton police officers, riding in marked police vehicles, patrolled East Stuyvesant Avenue and the 300 block of Rutherford Avenue. The streets are

presumably parallel to each other. As the first patrol car turned onto Stuyvesant Avenue, the officers observed two males sitting on the curb at the rear of a house that has its frontage on Rutherford Avenue. One of the males was drinking from a bottle wrapped in a brown paper bag. When the men observed the marked police vehicle, the man with the brown paper bag remained on the curb while the other, subsequently identified as defendant, quickly stood up, turned, and started running through the yard toward the front of the property on Rutherford Avenue. An officer in the first patrol car immediately radioed a description of the fleeing man to officers in the second patrol car, which was on East Rutherford Avenue. When defendant reached Rutherford Avenue, the second patrol car intercepted him. One of the officers in that car got out and began to pursue defendant. Defendant turned around and ran back toward the rear of the yard. As defendant ran past the back porch of the house, he threw a clear plastic bag into an opening under the porch. He then ran directly into one of the officers from the first patrol car, who stopped him. The officer who stopped defendant turned him over to the other officer and then retrieved the plastic bag from under the back porch. It contained crack cocaine.

Defendant moved to suppress the evidence. The Law Division reasoned that the police had illegally arrested defendant by trapping him in the backyard. The trial court held that because the police had neither probable cause nor a reasonable, articulable suspicion to believe defendant had committed a crime, neither an arrest nor an investigatory stop was justified. However, that court denied the motion to suppress on the basis that defendant had abandoned the contraband by tossing it under the porch, thereby relinquishing any reasonable expectation of privacy.

On appeal, the Appellate Division reversed, 265 *N.J.Super.* 358, 627 *A.*2d 174. Although it agreed with the trial court that the police had illegally seized defendant, it held that the act of discarding the goods had been the direct product of the illegal seizure rather than an abandonment. 265 *N.J.Super.* 358, 360–61,

627 *A.*2d 174 (1993). We granted the State's petition for certification, 134 *N.J.* 485, 634 *A.*2d 531 (1993), and defendant's cross-petition for certification, 134 *N.J.* 567, 636 *A.*2d 524 (1993).

## II

The United States Constitution protects persons from unreasonable searches and seizures. *U.S. Const.* amend IV. On the question of what constitutes a seizure, the State relies on the principles established in *California v. Hodari D.*, 499 *U.S.* 621, 111 *S.Ct.* 1547, 113 *L.Ed.*2d 690 (1991). In that case, a police officer patrolling a high-crime area in the late evening pursued Hodari on foot after Hodari and his companions separated and fled when they saw an unmarked patrol car. Just before the officer caught him, Hodari discarded an object. After tackling Hodari, the officer recovered the discarded object. It was crack cocaine. Hodari unsuccessfully challenged the admission of the evidence at the trial proceedings. The California Court of Appeal reversed on the basis that the police had seized Hodari illegally when they ran after him, and the court suppressed the evidence as the fruit of that seizure. *Id.* at 622–23, 111 *S.Ct.* at 1549, 113 *L.Ed.*2d at 695. The California Supreme Court denied an application for review by the state. *Id.* at 623, 111 *S.Ct.* at 1549, 113 *L.Ed.*2d at 695. The United States Supreme Court reversed, holding that no seizure had occurred. *Id.* at 626, 111 *S.Ct.* at 1550, 113 *L.Ed.*2d at 697. It ruled that although the officer's chase displayed a show of authority, a seizure under the Constitution requires the application of physical force, however slight, or a show of authority to which the suspect *yields*. *Id.* at 626, 111 *S.Ct.* at 1551, 113 *L.Ed.*2d at 697. Thus, because defendant did not comply with the officer's command to stop, the officer had not seized Hodari until he tackled him. Accordingly, the crack cocaine tossed before the tackle was not the product of a seizure. *Id.* at 629, 111 *S.Ct.* at 1552, 113 *L.Ed.*2d at 699.

The Appellate Division in this case found that under New Jersey law a seizure had occurred. The court adopted the ap-

proach of *United States v. Mendenhall,* 446 *U.S.* 544, 553–54, 100 *S.Ct.* 1870, 1877, 64 *L.Ed.*2d 497, 509 (1980), in which the Court held that a seizure occurs "only when, by means of physical force or a show of authority, [the suspect's] freedom of movement is restrained" and "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Heretofore, this Court has adopted that view. See *State v. Davis,* 104 *N.J.* 490, 498, 517 *A.*2d 859 (1986). The question posed is whether we should revise our doctrine of seizure to conform to the majority opinion in *Hodari D.* We generally attempt to conform our search-and-seizure jurisprudence to that of the United States Supreme Court. *See State v. Hunt,* 91 *N.J.* 338, 370, 450 *A.*2d 952 (1982) (Handler, J., concurring); *see also State v. Mollica,* 114 *N.J.* 329, 353, 554 *A.*2d 1315 (1989) (holding State constitutional protection of privacy interest in person's telephone records extends beyond that embraced by federal constitution).

*Hodari D.*'s "seizure" analysis is conceptually similar to the earlier analysis that required a trespass under property law and seizure of tangible evidence as a basis sufficient to establish a constitutional invasion. *Olmstead v. United States,* 277 *U.S.* 438, 464, 48 *S.Ct.* 564, 568, 72 *L.Ed.* 944, 950 (1928). Those property-based principles have been subsumed in later years by the question whether the person had a reasonable expectation of privacy in the matter seized, be it a communication in the form of a writing or an electronic record, or other tangible or intangible evidence of guilt. *See Katz v. United States,* 389 *U.S.* 347, 352–53, 88 *S.Ct.* 507, 512, 19 *L.Ed.*2d 576, 582–83 (1967). For example, in *State v. Hempele,* 120 *N.J.* 182, 576 *A.*2d 793 (1990), we did not concern ourselves with whether garbage from which evidence had been obtained constituted property owned by the accused. Rather, we addressed whether the accused had a reasonable expectation that communications and other evidence of his activities found in the garbage would not be subject to warrantless searches by governmental authorities.

We have also viewed questions of search and seizure in terms of the use of governmental authority to obtain evidence of criminal activity. We have analyzed the issue of drug testing of police officers in terms of whether the governmental compulsion to produce bodily fluids was reasonable under the circumstances. *Rawlings v. Police Dep't*, 133 *N.J.* 182, 188–89, 627 *A.*2d 602 (1993).

Thus, we have viewed the guarantees of the Constitution not in terms of property law but in terms of protecting the reasonable expectations of citizens to be "secure in their persons, houses, papers and effects * * *." *N.J. Const.* art. I, ¶ 7. The Court's reliance in *Hodari D.* on dictionary definitions of seizure may be misplaced. In commenting on the decision in *Hodari D.*, Professor LaFave has noted:

> "[I]t is not enough for the judge just to use a dictionary," for such a limited approach may produce a result "which would contradict or leave unfulfilled" the "plain purpose" of the provision being interpreted. Surely this is likewise true for interpretation of the Constitution, meaning that "the Fourth Amendment safeguards against all evils that are like and equivalent to those embraced within the ordinary meaning of its words."

> [T]he Court correctly states that the officer's chase was not a common-law arrest, but fails to point out that this conduct amounted to an attempted arrest, which was also unlawful at common law.

> [3 Wayne R. LaFave, *Search and Seizure* § 9.2A(d), at 122 (2d ed. Supp.1994) (quoting Learned Hand, *How Far is a Judge Free in Rendering a Decision?*, in *The Spirit of Liberty* 103, 106 (I. Dilliard ed., 1952) and *Olmstead, supra*, 277 *U.S.* at 488, 48 *S.Ct.* at 576, 72 *L.Ed.* at 961 (Butler, J., dissenting)) (footnotes omitted).]

To conform our doctrine now to *Hodari D.* would require too radical a change in our search-and-seizure law. We shall continue to define a seizure under New Jersey constitutional law in accordance with our existing precedent, *Davis, supra*, 104 *N.J.* 490, 517 *A.*2d 859, and decide this case on state constitutional grounds. *State v. Novembrino*, 105 *N.J.* 95, 519 *A.*2d 820 (1987).

Applying that test, analysis of whether citizens are "secure in their persons" depends on an objective analysis of all the circumstances of their encounter. In other contexts, as in a request to passengers on a bus to permit a search of baggage, "a

court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501 *U.S.* 429, 439, 111 *S.Ct.* 2382, 2389, 115 *L.Ed.*2d 389, 402 (1991).

■ Under the circumstances of this case, although no evidence shows that the police commanded defendant to halt or displayed any weapons, the officers immediately pursued him when he ran. The officers summoned assistance from a nearby patrol car to attempt to set up a blockade with the police cars on the streets at the front and rear of the yard when defendant started to run away. As defendant ran through the yard, he observed a police car closing in at the front yard. Defendant reversed his direction. However, an officer approached him from the back yard. Surely defendant could not have felt free to leave. Such police actions would cause a reasonable person to believe that the police wanted to capture him and not just to speak with him. We do not believe that a person in such a situation would reasonably feel free to "terminate the encounter." *Ibid.* In a similar case (albeit a case with a command by the officers to "Come Here"), the Maryland Court of Appeals ruled:

> The approach by two officers, * * * the immediate pursuit by the officers when [the defendant] ran, the attempt to set up a blockade with the police car when it was apparent that [the defendant] was getting away, the joiner of the third officer in the posse, leaving the police car unattended, the attempt by one of the pursuers to circumvent a possible line of flight—all of these measures were amply sufficient to communicate to the reasonable person an attempt to capture or otherwise intrude upon freedom of movement.

[*State v. Lemmon,* 318 *Md.* 365, 568 *A.*2d 48, 53 (1990).]

Therefore, we agree with the courts below that a seizure of the person had occurred in these circumstances.

### III

■ Was this seizure justified? After all, what are the police expected to do when they see a youth racing through a neighbor-

hood?  Did the police surmise that Tucker was not a jogger?  If the police did nothing, they would be accused of neglect of duty. The police ought continue to follow the youth if they suspect criminal activity.  Not every police pursuit is a seizure.

> Otherwise, we would effectively reduce the role of a police officer to that of a mere spectator.  Effective law enforcement techniques not only require passive police observation, but also necessitate their interaction with citizens on the streets.  This interaction means that oftentimes the police must follow after and observe persons moving faster than a person walking at a normal pace.
>
> [*People v. Mamon*, 435 *Mich.* 1, 457 *N.W.2d* 623, 628 (1990).]

In *Michigan v. Chesternut*, 486 *U.S.* 567, 108 *S.Ct.* 1975, 100 *L.Ed.*2d 565 (1988), the Court held that police conduct of following and driving beside Chesternut as he ran away at the sight of the police car did not constitute a seizure before Chesternut discarded contraband.  The Court reversed the lower courts' dismissal of Chesternut's charges and remanded the case for further proceedings.

We have emphasized the need for police to engage in investigative processes to gather evidence of crime.  New Jersey has long recognized that a temporary street detention based on less than probable cause may be constitutional.

> A police officer charged with the duty of crime prevention and detection and protection of the public safety must deal with a rich diversity of street encounters with citizens.  In a given situation, even though a citizen's behavior does not reach the level of "highly suspicious activities," the officer's experience may indicate that some investigation is in order.  Depending on the circumstances, street interrogation may be most reasonable and proper.
>
> [*State v. Sheffield*, 62 *N.J.* 441, 446, 303 *A.2d* 68, *cert. denied*, 414 *U.S.* 876, 94 *S.Ct.* 83, 38 *L.Ed.*2d 121 (1973).]

Recently, in *State v. Smith*, 134 *N.J.* 599, 637 *A.2d* 158 (1994), we held that a police officer could order a passenger out of an automobile if the officer had an articulable suspicion short of probable cause to believe that a crime had been committed.  So too, a police officer on patrol, as these officers were, having an articulable suspicion that citizens are engaged in illegal activity, has the right to question the suspects.  In the landmark decision of *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968), to which our courts adhere, the Supreme Court emphasized that a

police officer has not only the right but also the obligation to question suspicious people on the street when it would be "poor police work" not to investigate further. *Id.* at 23, 88 *S.Ct.* at 1881, 20 *L.Ed.*2d at 907; *see also State v. Valentine,* 134 *N.J.* 536, 553–54, 636 *A.*2d 505 (1994) (holding frisk of defendant was reasonable based on officer's personal knowledge of defendant's prior criminal history involving weapons and drugs; fact that stop occurred after midnight in high-crime area; officer's observation of defendant ducking behind tree and then emerging with hands in pockets; and defendant's nervousness and failure to make eye contact with officer); *Davis, supra,* 104 *N.J.* at 507, 517 *A.*2d 859 (holding that "particularized suspicion" that youth was engaged in criminal activity justified seizure).

Even in a pre-*Terry* decision, we recognized that "[t]he police officer's duties include vital preventive roles" and that reason and common sense dictate that the officer should clearly "have the right to stop persons on the street for summary inquiry where, as here, the circumstances are so highly suspicious as to call for such inquiry." *State v. Dilley,* 49 *N.J.* 460, 464, 231 *A.*2d 353 (1967). In determining the reasonableness of the detention, we concluded that all factors must be balanced, including the basis of the suspicion on the part of the police officer and the nature and extent of the restraint on the individual. *Id.* at 468, 231 *A.*2d 353. Once a reasonable detention is established, "reactions by individuals to a properly limited *Terry* encounter, * * * such as flight, may often provide the necessary information, in addition to that the officers already possess, to constitute probable cause." *Kolender v. Lawson,* 461 *U.S.* 352, 366 n. 4, 103 *S.Ct.* 1855, 1863 n. 4, 75 *L.Ed.*2d 903, 915 n. 4 (1983) (Brennan, J., concurring); *see* 3 LaFave, *supra,* § 9.2(d) (2d ed. 1987).

Hence, under circumstances demonstrating particularized suspicion as in *Hodari D.,* such as a high-crime location or late-evening to early-morning hours, police would have greater latitude to subject a citizen to an investigatory stop. The difficulty with this case is that the sole basis asserted for police action

was the youth's flight. Although flight is evidence that a fact finder may consider in assessing guilt, our model jury charge requires that it be accompanied by some evidence of criminality. The model jury charge states that "[f]light may * * * be considered as evidence of consciousness of guilt [only] if [the jury] should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment." *Model Jury Charges (Criminal)*, Flight (November 18, 1991). Or, put the other way, "For departure to take on the legal significance of flight, *there must be circumstances present and unexplained which, in conjunction with the leaving,* reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt." *State v. Sullivan,* 43 *N.J.* 209, 238–39, 203 *A.*2d 177 (1964) (emphasis added).

We are not as satisfied as the Supreme Court was in *Hodari D., supra,* that the biblical observation that " '[t]he wicked flee when no man pursueth' " is a satisfactory explanation of why a young man in a contemporary urban setting might run at the sight of the police. 499 *U.S.* at 623 n. 1, 111 *S.Ct.* at 1549 n. 1, 113 *L.Ed.*2d at 696 n. 1 (quoting *Proverbs* 28:1). That some city residents may not feel entirely comfortable in the presence of some, if not all, police is regrettable but true.

We are certain that had this record been made more complete, it would more fully disclose the rationale that led the police to pursue the youth. As the Appellate Division observed:

[W]hat this record does *not* show is also highly persuasive: no observed criminal activity; no particularized suspicious conduct, such as the possession of suspicious packages or the exchanging of money; no reports of recent nearby crimes; no descriptions of recent crime suspects; no nearby potential or [actual] victims of crimes; no nearby vehicle matching a description of a vehicle involved in a recent crime, or the like.

[265 *N.J.Super.* at 360, 627 *A.*2d 174.]

For example, the Appellate Division in *State v. Doss,* 254 *N.J.Super.* 122, 603 *A.*2d 102, *certif. denied,* 130 *N.J.* 17, 611 *A.*2d

655 (1992), held that police had justifiably stopped and interrogated the defendant because of the circumstances described in that record. On a November evening at 11:30, in unmarked vehicles, police were patrolling a parking area where drug trafficking was known to be prevalent. *Id.* at 125, 603 *A.*2d 102. Approximately twenty people had gathered, and someone alerted the group that the approaching car was a police vehicle. Three or four persons, along with the defendant, ran from the crowd. Police, in their car, followed the defendant until he entered an alley. They got out of the car and pursued the defendant on foot. A police detective repeatedly commanded the defendant to halt. When the defendant ran into a lighted area, the detective recognized him as someone whom he had previously observed on several occasions talking with convicted drug dealers. *Ibid.* The detective testified that he suspected that the defendant had run because he had committed a crime or that a warrant had issued for his arrest. *Id.* at 126, 603 *A.*2d 102. Those circumstances supported the officer's articulable suspicion to stop and interrogate defendant. As the Appellate Division in this case noted, "the only ostensible basis for [the police] to have pursued defendant was that defendant had inexplicably fled when he saw the police van." 265 *N.J.Super.* at 360, 627 *A.*2d 174. On that record, we do not find a basis to justify the police seizure of defendant. Unlike the circumstances in *Valentine, supra,* 134 *N.J.* at 540, 636 *A.*2d 505, the police did not assert knowledge of a prior criminal history on the part of Tucker. His record discloses that this was his first adult conviction. At the time of the offense, he was a high school graduate and had attended college for two years. The police may have known more, but this record does not establish more.

## IV

Finally, even though defendant's detention was invalid, we must consider whether defendant abandoned the evidence. The decision turns on our disposition of the "seizure" issue. Although the decision in *Chesternut, supra,* precedes *Hodari D., supra,* the

holding in *Chesternut* implies that discarded goods that are the product of an illegal seizure should be suppressed. 486 *U.S.* at 574, 108 *S.Ct.* at 1980, 100 *L.Ed.*2d at 572.

Based on the holding in *State v. Farinich*, 179 *N.J.Super.* 1, 430 *A.*2d 233 (1981), *aff'd*, 89 *N.J.* 378, 446 *A.*2d 120 (1982), the trial court below ruled that the evidence need not be suppressed. In *Farinich*, the Appellate Division held that if evidence supports an inference that defendants had no desire to retrieve the belongings that they had discarded, a voluntary abandonment has occurred, permitting the police to search the discarded property without a warrant. In *Farinich*, the police received information that a suitcase arriving aboard a plane might contain marijuana. When two men claimed their suitcases from the baggage area of the airport, uniformed officers approached the men and led them to a side area for questioning. Farinich hit one officer's arm, dropped the suitcase, and ran. *Id.* at 4, 430 *A.*2d 233. Subsequently, the police apprehended the men, brought them to the baggage office, and searched the suitcases, which contained marijuana. *Id.* at 4–5, 430 *A.*2d 233. The court found that the defendants had abandoned the suitcases before the police had acted unreasonably, and, therefore, no violation of defendants' Fourth Amendment rights had occurred. *Id.* at 5, 430 *A.*2d 233. In *Farinich*, because the police received a tip that Farinich's suitcase might contain marijuana, they had articulable suspicion of criminal activity to stop and question him. Thus, when Farinich abandoned his suitcase, he had not been the subject of an unreasonable seizure. However, in Tucker's case, the police seized him without articulable suspicion prior to his abandonment of the plastic bag. Not until Tucker found himself blocked by the police in the yard did he toss the bag into the hole under the porch. The *Farinich* court did say:

> It has been held that while police may have the right to make an inquiry, in the absence of information that a crime has occurred a suspect's failure to stop or his flight would be an insufficient basis for seizure or detention, but even in such case evidence seized will not be suppressed if the suspect abandoned it.

*[Ibid.]*

Although abandonment is "the voluntary relinquishment of all right, title, claim and possession, with the intention of not reclaiming it," *Black's Law Dictionary* 2 (5th ed. 1979), Professor LaFave has noted:

> "Property is not considered abandoned when a person throws away incriminating articles due to the unlawful actions of police officers." Thus, where a person has disposed of property in response to a police effort to make an illegal arrest or illegal search, courts have not hesitated to hold that property inadmissible.
>
> [1 LaFave, *supra*, § 2.6(b), at 471–72 (quoting *State v. Reed*, 284 *So*.2d 574, 575 (La.1973)) (footnotes omitted).]

■ The issue is whether the abandonment was the product of an illegal seizure. That issue is one of fact and depends on whether the relationship of the act of abandonment with the official conduct is so attenuated that it allows admission of the evidence. *See State v. Johnson*, 118 *N.J.* 639, 653, 573 *A.*2d 909 (1990). As Professor LaFave explains: "Incriminating admissions and attempts to dispose of incriminating evidence are common and predictable consequences of illegal arrests and searches, and thus to admit such evidence would encourage such Fourth Amendment violations in future cases." 4 LaFave, *supra*, § 11.4(j), at 459–60. The Appellate Division below held that "[t]he contraband jettisoned by defendant in response to the improper police conduct thus should have been suppressed." 265 *N.J.Super.* at 360–61, 627 *A.*2d 174. Because we have held that there was an unreasonable seizure, we agree that the goods were not abandoned.

## V

To sum up, there can be no doubt of "the need for strengthened law enforcement tools to combat the epidemic of crime that plagues our Nation. The concern of our citizens with curbing criminal activity is certainly a matter requiring the attention of all branches of government." *Kolender, supra*, 461 *U.S.* at 361, 103 *S.Ct.* at 1860, 75 *L.Ed.*2d at 911. The problem with this case is that we are forced to deal in abstract concepts of seizure divorced from the reality of the streets. Were all of the circumstances

known, we rather suspect that it would appear that the police did not pursue Tucker just because he ran. However, we must decide the case on the record that is before us.

Police are not to be mere spectators of events. They may pursue persons to further investigation. Not every police pursuit is a seizure. A pursuit will very often turn up incriminating evidence or other circumstances that give rise to an articulable suspicion that the pursued is engaged in criminal activity. The decisions of *Terry, supra,* and its progeny fully recognize that police officers must respond, short of arrest, to suspicious situations. A brief stop for questioning is an effective tool of police officers for investigating and preventing crimes. Under the *Terry* doctrine, provided articulable suspicion exists, police officers are permitted to use an official "show of authority," to detain the person with physical force, and to search the person for weapons. 392 *U.S.* at 19 n. 16, 88 *S.Ct.* at 1879 n. 16, 20 *L.Ed.*2d at 905 n. 16. However, such manifestations of police authority, unsupported by articulable suspicion of criminal activity, may turn a police pursuit into an unlawful seizure. Because the flight of defendant alone, without other articulable suspicion of criminal activity, generated by the pursuit does not meet the *Terry* standards for an articulable suspicion, the police seizure was not justified. Defendant's abandonment of the evidence transpired after defendant no longer was free to leave and after the police had unlawfully seized him; therefore, the Appellate Division properly excluded the evidence.

We affirm the judgment of the Appellate Division.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.