686 A.2d 1208

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. FREDERICK A. HUGHES, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1996—Decided January 7, 1997.

Before Judges MICHELS, KLEINER and COBURN.

*Paul M. Klein,* Deputy Public Defender II, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Klein,* of counsel and on the letter brief).

*Jack L. Weinberg,* Special Deputy Attorney General, Acting Assistant Camden County Prosecutor, argued the cause for respondent (*Lee A. Solomon,* Assistant Attorney General, Acting Camden County Prosecutor, attorney; *Mr. Weinberg,* of counsel and on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Following denial of his motion to suppress evidence seized pursuant to a warrantless search, defendant Frederick A. Hughes pleaded guilty to possession of a controlled dangerous substance, to wit: cocaine, a crime of the third degree, in violation of *N.J.S.A.* 2C:35–10a(1). The trial court committed defendant to the custody of the Commissioner of the Department of Corrections for five years, which was to be served concurrently with a sentence imposed for a parole violation. In addition, the trial court imposed a $1,000 Drug Enforcement Demand Reduction penalty, a

$50 forensic laboratory fee, a $50 Violent Crimes Compensation Board penalty, a $75 Safe Neighborhood Service Fund assessment and suspended defendant's New Jersey driver's license for six months. Defendant appeals.

The proofs at the suppression hearing established that on June 1, 1994, at approximately 6:42 p.m., Officer Kenneth Eller of the Gloucester City Police Department was on routine patrol. Officer Eller was located at the corner of King Street and Broadway in Gloucester City. He was in the northbound lane facing the City of Camden assisting a motorist with directions when he observed defendant traveling by bicycle southbound on Broadway, coming from Camden. Based upon his experience, Officer Eller knew that this route between Gloucester City and Camden was an illicit drug route: people either walking or bicycling between Camden and Gloucester City were usually carrying illegal drugs.

As he rode past Officer Eller, defendant sped up. Officer Eller left the motorist, made a U-turn, and began following defendant. Defendant was aware of the officer's presence as he kept looking back at the officer while he was being followed. Officer Eller accelerated his vehicle so that he was within ten to fifteen feet behind defendant. While he followed defendant, Officer Eller never illuminated his overhead lights or ordered defendant to stop.

As defendant was traveling down Warren Street, Officer Eller observed defendant reach into his waistband and pull out a black object. Defendant appeared to look for a place to throw the object and finally threw it against a curb where it landed. Defendant traveled approximately fifty feet further from where he threw the object and then voluntarily stopped his bicycle on the corner of Warren Street and Broadway.

In the meantime, Officer Eller radioed for backup. When defendant voluntarily stopped, Officer Eller pulled up to him to ask him his name and what he was doing. At the time that Officer Eller was getting out of his car, Sergeant James arrived as the backup unit. Officer Eller requested that the sergeant stay with defendant while he went back to retrieve the discarded object.

Officer Eller located the object exactly where defendant threw it. It contained seven bags of cocaine.

At the conclusion of the proofs, Judge Natal in the Law Division found that defendant was not seized by Officer Eller's actions, and denied the motion to suppress the evidence. In reaching this conclusion, the trial court reasoned that there exists a need for officers to engage in an investigative procedure in order to gather evidence of a crime and that Officer Eller's experience with the traffic route from Camden warranted the officer to at least stop and talk to defendant in order to find out his name. The trial court found that Officer Eller had not stopped defendant at the time defendant had abandoned the drugs. Further, the trial court found that after Officer Eller picked up the abandoned drugs, he had a right to arrest defendant. Defendant appealed.

Defendant seeks a reversal of the order denying his motion to suppress evidence, a reversal of his conviction and the sentence imposed thereon, and a remand to the trial court for further proceedings. He contends that where the police had no reasonable basis to believe that he was engaged in criminal activity, the pursuit and ultimate arrest violated his right to be free from unreasonable searches and seizures under the United States Constitution and the New Jersey Constitution. We disagree and affirm.

The United States Constitution protects persons from unreasonable searches and seizures. *U.S. Const.* amend. IV. In considering whether police conduct amounts to a seizure implicating the Fourth Amendment, a court must consider all of the circumstances surrounding a particular incident. *United States v. Mendenhall,* 446 *U.S.* 544, 554, 100 *S.Ct.* 1870, 1877, 64 *L.Ed.*2d 497, 509 (1980).

In *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968), the United States Supreme Court stated:

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of

authority, has in some way restrained the liberty of a citizen may we concluded that a "seizure" has occurred.

[*Id.* at 19 n. 16, 88 *S.Ct.* at 1879 n. 16, 20 *L.Ed.*2d at 905 n. 16.]

In *United States v. Mendenhall, supra,* 446 *U.S.* at 553, 100 *S.Ct.* at 1877, 64 *L.Ed.*2d at 509, the Supreme Court adhered to the principles discussed in *Terry v. Ohio, supra,* and held that "a person is 'seized' only when, by means of physical force or by a show of authority, his freedom of movement is restrained . . . [and that] [o]nly when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." The Supreme Court emphasized that "the purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Mendenhall, supra,* 446 *U.S.* at 553–54, 100 *S.Ct.* at 1877, 64 *L.Ed.*2d at 509 (quoting *United States v. Martinez–Fuerte,* 428 *U.S.* 543, 554, 96 *S.Ct.* 3074, 3081, 49 *L.Ed.*2d 1116 (1976)). The *Mendenhall* Court then explained:

Moreover, characterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. "Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished."

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

[*Id.* at 554, 100 *S.Ct.* at 1877, 64 *L.Ed.*2d at 509 (citations omitted).]

New Jersey has adopted the principles expressed in *Terry v. Ohio, supra,* and *United States v. Mendenhall, supra. See State v. Davis,* 104 *N.J.* 490, 498–505, 517 *A.*2d 859 (1986). *See also State v. Sheffield,* 62 *N.J.* 441, 446, 303 *A.*2d 68 (1973), *cert. denied,* 414 *U.S.* 876, 94 *S.Ct.* 83, 38 *L.Ed.*2d 121 (1973). Thus, while Article I, paragraph 7 of the New Jersey Constitution may give greater protection against unreasonable searches and seizures than the Fourth Amendment of the United States Constitu-

tion, *see State v. Davis, supra*, 104 *N.J.* at 502, 517 *A.*2d 859; *State v. Bruzzese*, 94 *N.J.* 210, 216, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984); *State v. Hunt*, 91 *N.J.* 338, 344–46, 450 *A.*2d 952 (1982); *State v. Alston*, 88 *N.J.* 211, 225, 440 *A.*2d 1311 (1981); *State v. Johnson*, 68 *N.J.* 349, 353, 346 *A.*2d 66 (1975), we find that no enhanced protection is provided by our constitution under the facts in this case.

Applying the above principles, we agree with the trial court that defendant was not seized by Officer Eller before he discarded the cocaine. Officer Eller's conduct would not have communicated to a reasonable person an attempt to capture or otherwise intrude upon defendant's freedom of movement. Officer Eller made a U-turn and began to follow defendant. However, it is uncontroverted that Officer Eller never illuminated his overhead lights or ordered defendant to stop. It was only after defendant had discarded the cocaine and voluntarily stopped that Officer Eller pulled up to defendant to ask him his name and what he was doing. Officer Eller's actions in following defendant did not constitute a seizure for Fourth Amendment purposes. Defendant's voluntary discard of the cocaine was an abandonment. Moreover, defendant stopped voluntarily at the intersection and not as the result of any police directive. Additionally, defendant's arrest following the discovery of the abandoned cocaine was not the result of an illegal seizure by Officer Eller. Consequently, because there was not an unconstitutional seizure, the trial court properly denied defendant's motion to suppress the cocaine seized.

The result reached here is consistent with and supported by the United States Supreme Court's decision in *Michigan v. Chesternut* where, applying the principles set forth in *Terry v. Ohio, supra*, and *United States v. Mendenhall, supra*, the Supreme Court stated:

> Applying the Court's test to the facts of this case, we conclude that respondent was not seized by the police before he discarded the packets containing the controlled substance. Although Officer Peltier referred to the police conduct as a 'chase,' and the Magistrate who originally dismissed the complaint was impressed by this description, the characterization is not enough, standing alone, to implicate

Fourth Amendment protections. Contrary to respondent's assertion that a chase necessarily communicates that detention is intended and imminent, the police conduct involved here would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement. The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement. While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure. Without more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not "so intimidating" that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business. The police therefore were not required to have "a particularized and objective basis for suspecting [respondent] of criminal activity," in order to pursue him.

[486 *U.S.* 567, 574, 108 *S.Ct.* 1975, 1980–81, 100 *L.Ed.*2d 565, 572–73 (1988) (alteration in original) (citations and footnotes omitted).]

Finally, we would point out that *State v. Tucker,* 136 *N.J.* 158, 642 *A.*2d 401 (1994), relied upon by defendant is clearly distinguishable and does not support a contrary result. Moreover, in *State v. Tucker, supra,* our Supreme Court reaffirmed its adoption of the analysis set forth in *United States v. Mendenhall, supra.* Thus, our Court noted that defendant was not only being chased by a patrol car but he was also blocked in by other patrol cars and thus trapped, compelling the Court to comment that

[s]urely defendant could not have felt free to leave. Such police actions would cause a reasonable person to believe that the police wanted to capture him and not just to speak with him. We do not believe that a person in such a situation would reasonably feel free to "terminate the encounter."

[*State v. Tucker, supra,* 136 *N.J.* at 166, 642 *A.*2d 401.]

But the Court then emphasized that

[p]olice are not to be mere spectators of events. They may pursue persons to further investigation. Not every police pursuit is a seizure. A pursuit will very often turn up incriminating evidence or other circumstances that give rise to an articulable suspicion that the pursued is engaged in criminal activity. The decisions of *Terry, supra,* and its progeny fully recognize that police officers must respond, short of arrest, to suspicious situations. A brief stop for questioning is an effective tool of police officers for investigating and preventing crimes.

[*Id.* at 173, 642 *A.*2d 401.]

In sum, the trial court's findings and conclusions that there had not been a seizure of defendant by Officer Eller prior to the time

that defendant abandoned the cocaine and voluntarily stopped at the intersection is amply supported by the proofs and there is no sound reason or justification for us to interfere therewith. *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964).

Affirmed.