719 A.2d 206 (1998)
315 N.J. Super. 567
STATE of New Jersey In the Interest of C.B., Juvenile-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1998.
Decided November 5, 1998.
*208 Ivelisse Torres, Public Defender, for juvenile-appellant (Paul M. Klein, Deputy Public Defender II, of counsel and on the brief).
Lee A. Solomon, Camden County Prosecutor, for respondent (Gregg I. Perr, Assistant Prosecutor, of counsel and on the brief).
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
*207 The opinion of the court was delivered by SKILLMAN, J.A.D.
C.B., a sixteen-year-old boy, was charged with acts of juvenile delinquency which, if committed by an adult, would constitute possession of marijuana, in violation of N.J.S.A. 2C:35-10a(1), possession of marijuana with the intent to distribute, in violation of N.J.S.A. 2C:35-5b(2), and possession of marijuana within 1,000 feet of a school with the intent to distribute, in violation of N.J.S.A. 2C:35-7. Defendant filed a motion to suppress the evidence upon which these charges were based. After an evidentiary hearing, the trial court denied the motion. The juvenile subsequently pled guilty to an amended charge of fourth degree conspiracy to possess marijuana, in violation of N.J.S.A. 2C:5-2. The trial court then sentenced the juvenile to a one-year term of probation.
On appeal, the juvenile argues that the trial court erred in denying his motion to suppress. We reject this argument and affirm the adjudication of delinquency.
At the hearing on the juvenile's motion to suppress, Officer Dayton, a member of the Camden Police Department, testified that he and his partner were on routine patrol in a marked police van around 11:30 a.m. on May 7, 1997, when they received a radio dispatch to investigate a report of a man with a gun at the intersection of 9th and Pearl Streets. This dispatch, which was apparently based on an anonymous tip received at police headquarters, did not include any description of the person alleged to be in possession of the gun. Upon their arrival at the intersection less than two minutes later, the officers observed three or four individuals, one of whom was the juvenile. When the juvenile saw the police approaching, he got onto a bicycle and fled the area. After following the juvenile for a block or two without activating their siren, the police drove their van alongside his bicycle. The juvenile stopped, got off his bicycle and put his hands into his pockets. The officers got out of their van, approached the juvenile and directed him to remove his hands from his pockets. At this point, Dayton grabbed the juvenile's hands and pulled them out of his pockets; according to Dayton, he did this because he "wanted to make sure that [the juvenile] was not going for a *209 gun." As the juvenile's hands came out of his pockets, a sandwich bag containing what was later determined to be marijuana fell to the ground. The officers then arrested the juvenile.
The trial court found that the radio dispatch concerning a man with a gun at the intersection where the juvenile was standing and his flight upon seeing the police created "reasonable suspicion that the juvenile was involved in some criminal activity." The court also found that in view of the report concerning a man with a gun, the officers' actions in pulling the juvenile's hands out of his pockets "was a conservative method of self protection."
The juvenile argues that the police did not have sufficient evidence to justify a reasonable suspicion that he was armed and dangerous and consequently that they violated his rights under the Fourth Amendment to the United States Constitution and Article I, paragraph 7, of the New Jersey Constitution by stopping him and forcibly removing his hands from his pockets. The juvenile's argument presents two questions: first, at what point in time was the juvenile subject to an investigatory stop which implicated his constitutional rights, and secondly, did the police have the reasonable suspicion required to justify the stop. We address these questions in order.
"Under New Jersey law, a stop occurs when the police act in such a way that a reasonable person would believe that he or she is not free to leave." State v. Citarella, 154 N.J. 272, 280, 712 A.2d 1096 (1998). Under this test, the police do not effectuate a stop simply by approaching a person to ask questions, State v. Davis, 104 N.J. 490, 497, 517 A.2d 859 (1986); State v. Riccardi, 284 N.J.Super. 459, 467, 665 A.2d 793 (App.Div.1995), or by following a person in a police vehicle. State v. Hughes, 296 N.J.Super. 291, 296-98, 686 A.2d 1208 (App.Div.), certif. denied, 149 N.J. 410, 694 A.2d 195 (1997); cf. State v. Tucker, 136 N.J. 158, 173, 642 A.2d 401 (1994).
The juvenile could not reasonably have believed that his freedom of movement was restrained simply because a police van approached the intersection where he was standing. Consequently, it is clear that no stop had occurred at the time the juvenile got onto a bicycle and pedaled away from the intersection. We are also satisfied that the juvenile could not reasonably have believed that his freedom of movement was restrained when the police followed him a short distance from the intersection and drove alongside of him. The police did not activate their siren, direct the juvenile to stop his bicycle, or signal in any other way that he was not free to proceed. Thus, this case is distinguishable from cases such as Tucker, supra, 136 N.J. at 166, 642 A.2d 401, and Davis, supra, 104 N.J. at 498, 517 A.2d 859, in which the police used their patrol cars to block the path of fleeing suspects. Instead, it is similar to Hughes, supra, 296 N.J.Super. at 293-98, 686 A.2d 1208, in which we concluded that the police had not stopped a suspect on a bicycle simply by driving ten to fifteen feet behind him in a police car, and Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L. Ed.2d 565 (1988), in which the Court concluded that the police did not stop a pedestrian merely by driving alongside him for a short distance. See generally 4 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 9.3(a) (3rd ed.1996).
However, a stop did occur when the police officers got out of their car, approached the juvenile, ordered him to remove his hands from his pockets, and a moment later pulled his hands out of his pockets. At that point, a reasonable person would not have believed that he was free simply to walk away. Therefore, we must decide whether at that time the police had the reasonable suspicion required to justify an investigatory stop.
To justify an investigatory stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L. Ed.2d 889, 906 (1968); Citarella, supra, 154 N.J. at 278, 712 A.2d 1096. To justify a protective search for weapons incident to an investigatory stop, a police officer also must have a reasonable basis to believe that the suspect is "armed and dangerous." Terry, *210 supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L. Ed.2d at 909; State v. Thomas, 110 N.J. 673, 678-83, 542 A.2d 912 (1988). The determination whether the police have the reasonable suspicion required to justify an investigatory stop depends on the totality of the circumstances known at the time. Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L. Ed.2d 301, 309 (1990); State v. Valentine, 134 N.J. 536, 546, 636 A.2d 505 (1994). However, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." White, supra, 496 U.S. at 330, 110 S.Ct. at 2416, 110 L. Ed.2d at 309; accord Thomas, supra, 110 N.J. at 678, 542 A.2d 912.
An anonymous tip ordinarily does not provide the objectively reasonable suspicion required for an investigatory stop unless it is sufficiently corroborated by other evidence. White, supra, 496 U.S. at 329, 110 S.Ct. at 2416, 110 L. Ed.2d at 308. Such corroboration generally must take the form of a prediction of future actions of the suspect which indicate that the informant is "likely to ... have access to reliable information about that individual's illegal activities." Id. at 332, 110 S.Ct. at 2417, 110 L. Ed.2d at 310. However, this court held last term, adopting the reasoning of several federal circuit courts of appeals, that "because of the imminent danger posed by firearms, an anonymous tip that a person is armed should be treated differently than a tip concerning other forms of criminal activity and that such a tip may provide the basis for a stop and frisk even though the informant does not make any prediction of future behavior which is verified by police observations." State v. Sharpless, 314 N.J.Super. 440, 450, 715 A.2d 333 (App.Div.), certif. denied, ___ N.J. ___, ___ A.2d ___ (1998). We observed that "[t]he totality of the circumstances to which the Court refers in Alabama v. White must include [the existence of] an imminent danger that the police cannot ignore except at risk to their personal or the public's safety," and that "[t]his element of imminent danger distinguishes a gun tip from one involving possession of drugs." Id. at 450-51, 715 A.2d 333 (quoting United States v. Clipper, 973 F.2d 944, 949-51 (D.C.Cir.1992), cert. denied, 506 U.S. 1070, 113 S.Ct. 1025, 122 L. Ed.2d 171 (1993)). Applying this rationale, we concluded that an anonymous informant's tip concerning a man with a gun was sufficiently corroborated by the police officer's observations of a man at the location identified by the informant whose physical appearance matched the description which the informant had provided.
In this case, unlike in Sharpless, the information received by the police did not include any description of the appearance of the man allegedly in possession of a gun, and when the police arrived at the location identified by the informant, they observed three or four persons standing there. Therefore, when the police arrived on the scene, the anonymous tip was not sufficiently corroborated to justify a stop and weapons search of the juvenile or of any of the other persons standing at the intersection.
However, the police did not stop the juvenile at this point. The stop of the juvenile and the grabbing of his hands to determine whether he had a weapon only occurred after the juvenile had fled from the intersection and thrust his hands into his pockets. The question is whether this suspicious behavior together with the anonymous tip about a man with a gun which initially brought the police to the scene provided the reasonable suspicion required to justify the stop and incidental search of the juvenile.
Although flight at the sight of the police, standing alone, does not create the reasonable suspicion of criminal activity required for an investigatory stop, Tucker, supra, 136 N.J. at 168-70, 173, 642 A.2d 401, flight together with other suspicious circumstances may provide a sufficient basis for a stop. Ibid.; State v. Ruiz, 286 N.J.Super. 155, 161-63, 668 A.2d 460 (App.Div.1995), certif. denied, 143 N.J. 519, 673 A.2d 277 (1996); State in the Interest of J.B., 284 N.J.Super. 513, 517-20, 665 A.2d 1124 (App.Div.1995); State v. Doss, 254 N.J.Super. 122, 127-29, 603 A.2d 102 (App.Div.), certif. denied, *211 130 N.J. 17, 611 A.2d 655 (1992); see also Citarella, supra, 154 N.J. at 281, 712 A.2d 1096; see generally LaFave, supra, § 9.4(f). In J.B. the police, who were patrolling an area known for drug trafficking, received an anonymous tip that a large crowd was selling drugs at a particular intersection. As the police approached this intersection, they observed a group of individuals, including J.B., congregating at an adjoining intersection. At the sight of the police, J.B. ran away. The police subsequently located him in a crouched position. The police lifted J.B. out of this position because they were concerned that there might be either drugs or a weapon underneath his body. When the police did this, they found crack cocaine and a loaded handgun where J.B. had been crouched. In reversing an order suppressing this evidence, we noted, citing Tucker, that "[f]light from the police may not alone be significant," id. at 518, 665 A.2d 1124, and that the "telephone call ... alone would not have [provided] a basis to effect an arrest because the informant was anonymous and of unknown reliability." Id. at 519, 665 A.2d 1124. However, we concluded that "[t]he phone call and J.B.'s flight, coupled with the designated purpose of the patrol, gave [the police] a reasonable suspicion that J.B. was involved in criminal activity." Ibid. Similarly, in Sharpless we concluded that the suspect's attempt to walk away from the investigating officer and his refusal to accede to the officer's initial demand that he remove his hand from his pocket "provided an objectively reasonable basis for suspicion that the [anonymous] informant's tip was accurate and that defendant in fact possessed a weapon." 314 N.J.Super. at 452, 715 A.2d 333.
We reach the same conclusion in this case. As in Sharpless, the police officers had the rightindeed arguably a dutyto travel to the location where an anonymous informant told them they would find a man with a gun, even though this information did not provide the individualized reasonable suspicion required for a Terry stop. See ibid. ("The police cannot simply ignore information that an armed person is standing on a street corner."). Moreover, when one of those persons, who turned out to be the juvenile, fled at the sight of the police, the police officers' properly exercised their law enforcement responsibilities by following him to determine whether he might be engaged in unlawful activity. See Hughes, supra, 296 N.J.Super. at 291, 686 A.2d 1208. It was only after the juvenile responded to this police action by stopping his bicycle and thrusting his hands into his pockets that the police grabbed his hands. We are satisfied that under the totality of the circumstances known at that time, which included the anonymous information concerning a man with a gun at the intersection of 9th and Pearl Streets, the juvenile's flight from that intersection, and the juvenile's thrusting of his hands into his pockets as the police approached, there was an objectively reasonable basis for suspicion that he was armed and dangerous. Therefore, the limited intrusion involved in the police officers pulling the juvenile's hands out of his pockets did not constitute an unconstitutional search or seizure.
Affirmed.