**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2111-21

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

RAHEEM C. REED,

     Defendant-Respondent.

_____

        Submitted September 29, 2022 – Decided October 5, 2022

        Before Judges Geiger and Berdote Byrne.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-12-1240.

        Esther Suarez, Hudson County Prosecutor, attorney for appellant (Kevin R. Sipe, Assistant Prosecutor, on the brief).

        Joseph E. Krakora, Public Defender, attorney for respondent (Zachary Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

We granted the State's motion for leave to appeal an order granting defendant Raheem C. Reed's motion to suppress physical evidence seized from his person without a warrant. Based on our review of the record and the applicable legal principles, we reverse and remand for trial.

We glean the following facts from a body camera video and the testimony of Officer Andrew Barella, Detective William Costigan, and Officer Michael Sanchez of the Jersey City Police Department (JCPD) at the suppression hearing conducted on December 6, 2021. All three were experienced police officers. Costigan was a seventeen-year veteran of the JCPD, Barella had been employed as a JCPD officer since 2014, and Sanchez was a nine-year veteran of the JCPD, and having participated in over 100 firearms-related arrests.

During the evening of September 25, 2019, members of the JCPD Street Crimes Unit were on patrol in Jersey City. Barella and Sanchez received a call from Costigan informing them he had received an anonymous tip that a man had a handgun in the vicinity of Orient Avenue and Martin Luther King (MLK) Drive. Barella and Sanchez were further informed the man with the handgun was the same person who had jumped on a windshield during an aggravated assault a week earlier.

2

Upon receiving this information, Barella immediately knew the man to be defendant. Barella had known defendant for several years and had positively identified him on a video of the aggravated assault incident prior to the events of September 25, 2019.

As they were heading to Orient Avenue and MLK Drive, Barella received a call from a concerned citizen who reported that the man with the handgun was wearing dark clothing and sitting on a lawn chair on the sidewalk on the south side of Orient Avenue. The area was considered a high crime area that generated numerous police calls.

Upon arriving at the intersection of Orient Avenue and MLK Drive, Barella immediately recognized defendant sitting on a lawn chair, with three others also present only three to five feet away from defendant and at least five people on the corner. A third officer was also present. Barella and Sanchez approached defendant on foot.

Upon seeing Barella, defendant began to stand up. Defendant dropped his hand to his waistband. Sanchez testified that given the tip that defendant was armed with a handgun, the reputation of the area, and defendant's movements, he feared for his safety and the safety of the public. Sanchez told defendant, "Police, stop, don't move." Based on the circumstances, Sanchez holstered his

A-2111-21

handgun and the officers took defendant to the ground. Once he was on the ground, Barella and Sanchez gained control of defendant's hands. Sanchez then performed a pat-down of defendant and removed a handgun from defendant's waistband. Defendant was placed under arrest and heroin was found in defendant's hoodie pocket. A grand jury returned an indictment charging defendant with defendant was charged with numerous drug and weapons offenses.

Defendant moved to suppress the evidence seized from him. During oral argument on the suppression motion, defendant argued that the call Barella received was from a known confidential informant, not an anonymous, concerned citizen. The description given was vague. Defendant was wearing a headband, making it more difficult to identify him in the dark. Counsel contended the video does not show defendant reaching for his waistband. Instead, counsel maintained that defendant's hands "were resting in the position of his waistband." Relying on State v. Edmunds, 211 N.J. 117 (2012), defendant claimed the tip itself did not establish its reliability. Counsel argued that what started as a field inquiry "turned into an immediate investigative detention and an unlawful search."

The State countered that once Barella was told that the person with the handgun was the same person involved in the previous windshield incident, he immediately knew that it was defendant. Due to that connection, the tip was very specific. The State also noted the officers' training and experience should be considered when determining whether the stop was reasonable based on their observations. The State argued there was an objectively reasonable, particularized suspicion that defendant was unlawfully armed with a firearm. Aside from the description of the suspect's clothing and Barella's familiarity with defendant from the windshield incident, the tip provided the exact location where defendant was located and that he was sitting in a lawn chair. When officers arrived, Barella immediately recognized defendant as the person sitting in the lawn chair. The incident occurred in a high crime area known for narcotics activity and weapons. The tips reported the suspect had a handgun. Based on his training and experience, when defendant's hand dropped to his waistband, Sanchez reasonably feared for his safety and the safety of others.

In his oral decision, the trial judge recounted the facts and found the testimony of all three witnesses credible. In addition, the judge viewed video footage that captured the entire incident.

A-2111-21

The judge noted the officers testified the incident occurred in a high crime area where police responded to narcotics related activities, assaults, gunfire, and homicides. He further noted Sanchez testified that after he told defendant to stop and not move, he saw defendant drop his hand to his waistband. After watching the video of the incident multiple times, the judge observed "defendant was sitting down with both hands on the chair. Then when the officers approached, defendant's right arm moved downward." "The only movement [he] saw was . . . defendant's one hand." The judge stated it was not clear from the video that defendant moved his hand toward the waistband. He noted, however, "Sanchez only had a few seconds at nighttime in a high crime area to see whether [defendant] was reaching to his waistband or not." Notably, the judge did not find significant differences between the video and Sanchez's testimony. Moreover, he found Barella credibly testified that Sanchez "reached for [defendant's] waistband and recovered a dime bag of heroin." The judge made the following additional findings:

> [D]efendant appears to drop his hand to his waistband, in the area commonly used by an armed person to conceal a weapon. It was dark outside, the officers testified that it was a high-crime area on a busy street and (inaudible) high-crime area a reasonable officer with background knowledge of the condition of the area and had received an anonymous tip of a man with a gun

6

would have objectively have reason for concern for his safety.

The judge found the responding officers had a reasonable suspicion to conduct a Terry[1] stop and frisk defendant. The judge explained that generally, a protective search is performed by a pat-down of the exterior clothing or the least intrusive means reasonably available. The judge granted the suppression motion, finding the police did not use the least restrictive means to frisk defendant, as he was physically thrown to the ground before Officer Sanchez removed the handgun from defendant's waistband. The judge noted a traditional pat down frisk was not attempted; instead, Officer Sanchez immediately reached for defendant's waistband. He found the nature of the pat-down was "unreasonable." An order granting suppression was entered on January 12, 2022. The judge granted the State's motion to stay the ruling pending appeal.

We granted the State's motion for leave to appeal. On appeal, the State argues the trial court erred in granting the defendant's motion to suppress evidence seized.

"Our standard of review on a motion to suppress is deferential -- we 'must uphold the factual findings underlying the trial court's decision so long as those

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

A-2111-21

findings are supported by sufficient credible evidence in the record.'"  State v.

Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Ahmad, 246 N.J. 592,

609 (2021)).  However, we owe no deference to "[a] trial court's interpretation

of the law," and review "de novo" the "trial court's legal conclusions."  State v.

Lamb, 218 N.J. 300, 313 (2014).

The Federal and State Constitutions guarantee the right of individuals to

be free from unreasonable seizures by law enforcement.  U.S. Const. amend. IV;

N.J. Const. art. I, ¶ 7.  Under the Fourth Amendment, the seizure of a person

involves "the application of physical force to the body of a person with intent to

restrain" or "'submission to the assertion of authority.'"  Torres v. Madrid, 592

U.S. __, __, 141 S. Ct. 989, 995, 1003 (2021) (emphasis omitted) (quoting

California v. Hodari D., 499 U.S. 621, 626 (1991)).  However, our Supreme

Court has adopted a broader view of what constitutes a seizure under Article I,

Paragraph 7.  State v. Tucker, 136 N.J. 158, 165 (1994).

Under New Jersey law, a seizure may occur if under the totality of the

circumstances, "the police conduct would have communicated to a reasonable

person that the person was not free to decline the officers' requests or otherwise

terminate the encounter."  Id. at 166 (quoting Florida v. Bostick, 501 U.S. 429,

439 (1991)).  Consequently, a fleeing suspect is not seized under the Fourth

Amendment, Hodari D., 499 U.S. at 625-26, but might be seized within the meaning of Article I, Paragraph 7, Tucker, 136 N.J. at 173.

Even under Article I, Paragraph 7, not every encounter with law enforcement is a seizure. Tucker, 136 N.J. at 173 (observing that "[n]ot every police pursuit is a seizure"). For instance, a field inquiry is a voluntary interaction between an individual and law enforcement where "the police ask questions and do not compel [the] individual to answer." State v. Rosario, 229 N.J. 263, 271 (2017). "Because a field inquiry is voluntary and does not effect a seizure in constitutional terms, no particular suspicion of criminal activity is necessary on the part of an officer conducting such an inquiry." Id. at 272.

More intrusive encounters, however, generally constitute some form of seizure. See id. at 271. For example, an investigatory stop "is a temporary seizure that restricts a person's movement" and therefore "must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" Id. at 272 (alteration in original) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)). "Determining whether reasonable and articulable suspicion exists for an investigatory stop is a highly fact-intensive inquiry that demands evaluation of 'the totality of

circumstances surrounding the police-citizen encounter . . . .'" Goldsmith, 251 N.J. at 399 (quoting State v. Privott, 203 N.J. 16, 25 (2010)).

Once an investigative detention has been performed, a limited search of the suspect is permitted if there is a reasonable suspicion that the suspect is armed and dangerous. Terry, 392 U.S. at 27, 29-30. When conducting a Terry frisk of a suspect, police must utilize the least intrusive means in conducting the frisk. Privott, 203 N.J. at 31.

Further, "[a]n arrest – the most significant type of seizure by police – requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." Rosario, 229 N.J. at 272. "Although it is difficult to define the concept with precision, probable cause requires 'more than a mere suspicion of guilt' but less evidence than is needed to convict at trial." State v. Brown, 205 N.J. 133, 144 (2011) (quoting State v. Basil, 202 N.J. 570, 585 (2010)).

The judge held that the seizure of the handgun was unconstitutional because the officers did not use the least restrictive means to frisk defendant before taking him down and reaching for the handgun. We disagree.

Under the circumstances described in the officers' testimony, which the judge found credible, we conclude there was an objectively reasonable belief

that defendant was armed with a handgun and was reaching for it while the officers were at close range. "[T]he waistband is an area commonly used by armed persons to conceal a weapon." Privott, 203 N.J. at 29. This was not a situation "in which the officer[s] had the opportunity to reflect on possible alternative courses of action." State v. Dennis, 113 N.J. Super. 292, 299 (App. Div. 1971).

Once defendant began reaching for his waistband, the situation immediately evolved from the need to merely frisk defendant to detect the presence of a weapon to preventing defendant from grabbing and using the handgun that the officers reasonably believed he possessed. The officers were thereby justified in taking further steps to protect their safety and the other people present, particularly the three individuals a few feet away from defendant. State v. Roach, 172 N.J. 19, 28 (2002). Immediate action was both reasonable and necessary to protect the officers and others nearby. Adams v. Williams, 407 U.S. 143, 144-48 (1972). The facts described in the officers' testimony were sufficient to justify an objectively reasonable suspicion that defendant was armed with a handgun, and, by lowering his hand towards his waistband, a place where handguns are commonly concealed, was dangerous.

Under these circumstances, the Fourth Amendment and Article I, Paragraph 7 did not bar the officer's "action in reaching to the spot where the gun was thought to be hidden" – defendant's waistband – because this "limited intrusion [was] designed to insure [the officers'] safety." Id. at 148; see also People v. Superior Court, 94 Cal. Rptr. 728, 730 (Cal. Ct. App. 1971) (determining that the facts created a strong suspicion that the suspect "was armed and dangerous" justifying "the officer's action in removing and seizing the firearm without first performing the ceremony of a pat down"). "[N]either the federal nor state constitution imposes an inflexible regime of a pat-down first when doing so will jeopardize the life of a police officer." Privott, 203 N.J. at 36 (Albin, J., dissenting).

The officers were not required to use less intrusive means under these facts. We cannot expect officers to recklessly place their lives at risk. See 4 Wayne R. LaFave, Search and Seizure § 9.6(b) at 918 (6th ed. 2020) (noting that "situations arise on occasion in which it would be foolhardy for the officer to do anything short of an immediate search"). To mandate a limited pat-down under these circumstances would have delayed the officer from immediately gaining access to the handgun stashed in defendant's waistband that could have been used against him, the other officers and persons present.

A-2111-21

We conclude there was a reasonable and particularized suspicion that defendant was engaged in criminal activity—the unlawful possession of a handgun. When defendant lowered his hand to his waistband, Barella and Sanchez had a constitutionally adequate basis under both the Fourth Amendment and Article I, Paragraph 7 to take down defendant, conduct the limited search of the waistband area of his clothing, seize the handgun and heroin found there, arrest defendant, and conduct a search incident to arrest. The trial court erred by suppressing the evidence.

Reversed and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2111-21