**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0821-15T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DARIEN D. ANDERSON, a/k/a
LEONARD D. DAVIS,

      Defendant-Appellant.

_____

      Argued October 19, 2017 — Decided November 2, 2017

      Before Judges Simonelli and Haas.

      On appeal from Superior Court of New Jersey,
      Law Division, Monmouth County, Indictment No.
      14-12-2063.

      Cody T. Mason, Assistant Deputy Public
      Defender, argued the cause for appellant
      (Joseph E. Krakora, Public Defender, attorney;
      Mr. Mason, of counsel and on the briefs).

      Carey J. Huff, Assistant Prosecutor, argued
      the cause for respondent (Christopher J.
      Gramiccioni, Monmouth County Prosecutor,
      attorney; Ms. Huff, of counsel and on the
      brief).

PER CURIAM

After the trial court denied his motion to suppress a loaded handgun seized by the police, defendant pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count one); and fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count two). The court sentenced defendant to five years in prison on count one with a forty-two month period of parole ineligibility, and a concurrent one-year term on count two.

On appeal, defendant raises the following contentions:

POINT I

THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE OFFICERS DID NOT HAVE REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO JUSTIFY RUNNING AFTER [DEFENDANT].

POINT II

IF THE CONVICTIONS ARE NOT REVERSED, THE MATTER SHOULD BE REMANDED BECAUSE THE COURT FAILED TO RECOGNIZE ITS ABILITY TO SEEK A LOWER SENTENCE AND WRONGLY DENIED [DEFENDANT] JAIL CREDIT FOR TIME HE SPENT IN COUNTY JAIL.

A. The Interests of Justice Require a Remand to Allow [Defendant] to Seek a Sentencing Waiver on the Count One Mandatory Minimum.

B. The Sentencing Court Erred by Not Awarding Jail Credit for the Full Time [Defendant] Spent in Jail Before Trial.

Having considered the record in light of defendant's contentions and applicable law, we affirm the trial court's denial

2

of defendant's motion to suppress, but remand to permit defendant to file a motion to correct what he claims is an illegal sentence and to raise the sentencing credits issue before the trial court.

Sergeant Lorenzo Pettway of the Asbury Park Police Department was the only witness to testify at the suppression hearing. In the afternoon of May 3, 2014, Sergeant Pettway and two other officers were patrolling an apartment complex in a high-crime area known for recent gang activity, narcotics trafficking, and gun incidents. Because there was a "peace rally march" and a youth basketball tournament scheduled in the area that day, the apartment complex managers asked the officers to watch for individuals who were "cutting through or trespassing on the property[.]"

As the officers were driving through the complex in an unmarked police vehicle, Sergeant Pettway saw a man, later identified as defendant, walking past one of the apartment buildings. The sergeant's attention was drawn to defendant because despite the warm weather, defendant was wearing a hooded sweatshirt with the hood "pulled down tight over his head." On top of that, defendant wore "a puffy jacket, it was a vest type jacket that he had zipped up[.]"

Sergeant Pettway got out of the car and started walking toward defendant. He asked defendant if he "could speak to him for a second." Defendant looked back at the sergeant, "grabbed the

front of his waist, and started running." Defendant kept his hands "near the front of his crotch area" as he ran, and Sergeant Pettway testified that defendant's actions "[m]ade [him] think [defendant] either had a gun or had some kind of drugs or something illegal, he had something illegal the way he reacted."

Sergeant Pettway ran after defendant, but lost sight of him for a few moments after defendant ran around the side of a building. When the sergeant saw him again, defendant was still running, but he was no longer "holding the front of his waist" and his hands were free.

By that time, Sergeant Pettway had alerted the two other officers of the pursuit and they joined the chase. Defendant fell down near a playground area and Sergeant Pettway was able to apprehend him. Defendant stated that he ran away because he had outstanding warrants.

Because he suspected that defendant had discarded what he had been holding in the waist area of his pants during the chase, Sergeant Pettway "retraced our steps" in an attempt to locate any contraband. On top of some bushes near the entrance to one of the buildings defendant ran by, Sergeant Pettway found a black revolver with an orange bandana partially on top of it. The handgun "was cocked and loaded with six rounds of ammunition."

4

After hearing oral argument, the trial judge issued a thorough oral opinion denying defendant's motion to suppress the handgun. The judge found that Sergeant Pettway conducted a permissible field inquiry when he approached defendant and asked to speak to him.

The judge also found that defendant's action in grabbing the front of the waist of his pants as he began to run away raised a reasonable suspicion that defendant was carrying contraband. This suspicion, the judge determined, was further supported by the fact that after running around the side of a building and out of the sergeant's sight, defendant was next seen running with his hands completely free. Under the totality of these circumstances, the judge found that Sergeant Pettway had a reasonable and articulable suspicion of criminal activity that justified an investigatory stop and the subsequent seizure of the handgun. This appeal followed.

In Point I, defendant argues that the judge erred in denying his suppression motion. We disagree.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). We accord deference to the trial judge's factual findings, "so long as sufficient credible evidence in the record supports those findings[,]" State v. Gonzales, 227 N.J. 77, 101 (2016), or where

those findings "are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964). See also State v. S.S., 229 N.J. 360, 379 (2017) (holding "that a standard of deference to a trial court's factfindings . . . best advances the interests of justice in a judicial system that assigns different roles to trial courts and appellate courts"). However, we owe no deference to the trial judge's legal conclusions or interpretations of the legal consequences flowing from established facts and our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

It is clear that when Sergeant Pettway chased after defendant and ordered him to stop, the trooper instituted an "investigatory stop." See State v. Tucker, 136 N.J. 158, 166 (1994) (holding that an investigatory stop occurs when police officers chase a suspect and, under the totality of the circumstances, "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter") (quoting Florida v. Bostick, 501 U.S. 429, 439, 111 S. Ct. 2382, 2389, 115 L. Ed. 2d 389, 402 (1991)).

An investigatory stop, sometimes referred to as a <u>Terry</u>[1] stop, "is valid 'if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" <u>State v. Williams</u> (<u>Williams II</u>), 410 <u>N.J. Super.</u> 549, 555 (App. Div. 2009) (quoting <u>State v. Williams</u> (<u>Williams I</u>), 192 <u>N.J.</u> 1, 9 (2007)), <u>certif. denied</u>, 201 <u>N.J.</u> 440 (2010). "In making this determination, a court must consider '[t]he totality of circumstances.'" <u>Ibid.</u> (alteration in original) (quoting <u>Williams I</u>, <u>supra</u>, 192 <u>N.J.</u> at 9). The suspicion necessary to conduct a lawful <u>Terry</u> stop "need not rise to the 'probable cause necessary to justify an arrest.'" <u>State v. Pineiro</u>, 181 <u>N.J.</u> 13, 20 (2004) (quoting <u>State v. Nishina</u>, 175 <u>N.J.</u> 502, 511 (2003)).

When evaluating whether a police officer had a reasonable suspicion that criminal activity had taken place or was about to take place, a court must "ascribe sufficient weight to the officer's knowledge and experience and to the rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." <u>State v. Arthur</u>, 149 <u>N.J.</u> 1, 10-11 (1997). "[S]imply because a defendant's actions might have some speculative innocent explanation does not mean

---

[1] <u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 88 <u>S. Ct.</u> 1868, 20 <u>L. Ed.</u> 2d 889 (1968).

that they cannot support articulable suspicions if a reasonable person would find the actions are consistent with guilt." Id. at 11.

Our courts have held that "flight alone does not create reasonable suspicion for a stop[.]" Williams II, supra, 410 N.J. Super. at 555 (alteration in original) (quoting State v. Dangerfield, 171 N.J. 446, 457 (2002)). "However, flight 'in combination with other circumstances . . . may support [the] reasonable and articulable suspicion' required to justify a stop." Ibid. (alterations in original) (quoting Pineiro, supra, 181 N.J. at 26).

Applying these standards, we discern no basis for disturbing the trial judge's determination that the investigatory stop and the seizure of the handgun were valid under the totality of the circumstances presented in this case. The police were patrolling the high-crime area because of recent complaints about trespassers engaging in illegal activities in the apartment complex. Although it was a warm day, defendant was wearing a sweatshirt with the hood pulled up tightly around his head, and an additional jacket. When defendant began to run, he immediately grabbed the waist area of his pants which, in Sergeant Pettway's experience, is a place where contraband such as guns or narcotics is carried. After defendant ran around the building, he was no longer holding his

waist, which led the sergeant to conclude that defendant must have discarded what he had been carrying. Under these circumstances, the judge correctly denied defendant's motion to suppress.

In Point II, defendant raises two arguments that we cannot address on the current record. First, defendant contends that the trial judge failed to consider whether he was entitled to a "Graves Act waiver" under N.J.S.A. 2C:43-6.2, which allows the assignment judge to reduce the mandatory parole ineligibility term with the consent of the prosecutor. However, defendant did not request such a waiver before sentencing.

We generally "decline to consider questions or issues not properly presented to the trial court . . . unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Robinson, supra, 200 N.J. at 20 (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Neither situation exists here and, therefore, we decline to consider defendant's contention on this point. Nevertheless, because motions to correct an allegedly illegal sentence may be made at any time under Rule 3:21-10(b)(5), we remand to the trial court to permit defendant to file such a motion for the trial court's consideration.

Finally, defendant contends that he was entitled to jail time or gap-time credits on his sentence based upon the time he served

in county jail in connection with a municipal conviction. Both parties agree, as do we, that the trial court erred by denying credits for this time solely because defendant served this sentence in county jail. See State v. Walters, 445 N.J. Super. 596, 602-03 (App. Div. 2016) (noting that gap-time credits can be applied when a defendant services a municipal court sentence in county jail), certif. denied, 228 N.J. 495 (2017); Buncie v. Dep't of Corr., 382 N.J. Super. 214, 217 (App. Div. 2005) (stating that jail time credits are awarded for "time an individual spends in a county jail prior to trial and sentencing"), certif. denied, 186 N.J. 606 (2006).

However, the parties disagree over the exact nature and timing of the municipal sentence that forms the basis for defendant's claim for credits. Because the "factual antecedents" surrounding this issue were "never . . . subjected to the rigors of an adversary hearing" before the trial court, we remand this matter to the trial court for consideration in the first instance. Robinson, supra, 200 N.J. at 18.

In sum, we affirm defendant's conviction, and remand to the trial court for consideration of a motion by defendant to correct an allegedly illegal sentence, and his assertion that he is entitled to additional sentencing credits. In remanding, we express no view on the merits of defendant's contentions.

A-0821-15T1

Affirmed in part, and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0821-15T1