**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2437-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DONTA L. JOHNSON,

      Defendant-Appellant.

_____

Submitted March 7, 2022 – Decided March 16, 2022

Before Judges Sabatino and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-09-2166.

Joseph E. Krakora, Public Defender, attorney for appellant (Melanie K. Dellplain, Assistant Deputy Public Defender, of counsel and on the briefs).

Grace C. MacAulay, Acting Camden County Prosecutor, attorney for respondent (Natalie A. Schmid Drummond, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal from a conviction of a weapons offense solely involves search and seizure issues. Defendant, Donta L. Johnson, appeals the trial court's denial of his motion to suppress a gun seized without a warrant. Defendant had dropped the gun in the course of being chased by a police officer after two officers stopped him and a codefendant on a public sidewalk.

Although the trial court found the initial stop was unconstitutional, it concluded the officer's pursuit of defendant, who ran after being commanded to remain in place, was attenuated from the illegal stop. We remand this matter for additional consideration and findings by the trial court concerning the attenuation issue. Specifically, the trial court on remand shall expressly address and weigh each of the three attenuation factors prescribed by case law.

The following sequence of events is reflected in the record, which includes testimony at the suppression hearing as well as police body-cam recordings that were presented to the motion judge.[1]

On the afternoon of January 24, 2019, the Camden County Police Department received an anonymous tip that a male dressed all in black was

---

[1] We have reviewed the body-cam footage as part of our appellate review, giving due deference to the motion judge's interpretation of the footage and the evidence as a whole. State v. S.S., 229 N.J. 360, 379-81 (2017).

selling or using drugs from a location in a Camden neighborhood. No further description of the drug dealer was provided by the tipster.

An hour after receiving the tip, two police officers went to the location, a blighted residential street, but saw no drug dealing or using occurring. The police saw two groups of people. One group consisted of a group of about ten people. The other group consisted of defendant, who was dressed in all black clothing, and codefendant Shykill Young, who was dressed in all black except for a red hoodie. As the police approached, defendant and Young walked in the other direction, away from view.

About a half hour later, the two officers again saw defendant and Young walking down the same street. This time, the officers arranged to have a third officer park his car nearby to enable him to catch the two men if they fled. The two officers got out of their marked car and approached defendant and Young on the public sidewalk. One officer instructed defendant to take his hands out of his pockets and stand against a house's stairway. Defendant took his hands out of his pockets and then immediately ran away.

During the foot chase of defendant, an officer heard a "bang" of a metal object. That police officer chased defendant into a nearby alley. When he caught up with him, defendant had apparently fallen, and the officer handcuffed

3

him. The officer went back to the spot where he heard the bang and recovered an apparently discarded gun. The other officer also searched Young, who had stayed in front of the house where he and defendant were initially stopped. That officer found on Young a gun, bags of heroin, and other drugs.

After defendant and Young were charged with various offenses, they moved to suppress the contraband seized without a warrant. The judge conducted an evidentiary hearing at which two of the officers testified. No defense witnesses testified.

The court issued a written opinion on February 12, 2020 suppressing all the evidence against Young but denying the motion as to the evidence against defendant.

The court reasoned that under Terry v. Ohio, 392 U.S. 1 (1968), the police initially lacked reasonable suspicion to conduct an investigatory stop of either defendant. The court noted the tipster's report was not confirmed. The description of a male dressed in black was generic. Moreover, Young's hoodie was red, not black. The tipster also reported only one man was selling or using drugs, yet defendant and Young were seen together by the officers at each time. The court found it insignificant that defendant and his codefendant had initially walked away from police earlier. The court noted the area was not considered

a high crime area, although the written opinion later makes a contradictory finding when discussing defendant.

The court upheld the officer's second stop of defendant that took place in the alley, because defendant had disobeyed the police command to stand by the stairway and instead ran away. On this point, the judge relied on the Supreme Court's opinions in State v. Williams, 192 N.J. 1 (2007) ("Williams I") and State v. Crawley, 187 N.J. 440, 458 (2006), which held that a defendant who disobeys a police officer's command to stop, even if that command is unlawful, can still be guilty of obstruction of justice. The court rejected defendant's argument that his flight, which was close in time, was not attenuated from the unconstitutional Terry stop. The judge also found the gun had been discovered by police in a public area in plain view, and the search of defendant's person was incident to a lawful arrest.

After losing the suppression motion, defendant entered into a plea agreement to plead guilty to a gun possession count, N.J.S.A. 2C:39-5(b)(1), with the State dismissing other counts against him for eluding and other offenses. By order of the Assignment Judge, the court approved a Graves Act sentencing downgrade, pursuant to N.J.S.A. 2C:43–6(c). Consequently, the trial judge sentenced defendant to a five-year term subject to a one-year mandatory

5

parole disqualifier. Pursuant to <u>Rule</u> 3:5-7(d), defendant's right to appeal the suppression ruling was preserved.

On appeal, defendant's brief argues the following point:

POINT I

THE MOTION COURT'S DENIAL OF DEFENDANT'S SUPPRESSION MOTION MUST BE REVERSED BECAUSE DEFENDANT'S ACTIONS FOLLOWING AN ILLEGAL INVESTIGATORY STOP DID NOT ATTENUATE THE TAINTED STOP.

Upon due consideration of this argument, the existing record, the trial court's written opinion, and the applicable law, we remand the matter for further consideration of the attenuation issue. We do so because the trial court's opinion did not fully analyze the multi-factor legal test for attenuation prescribed by case law.

It is well established that the exclusionary rule bars the State from entering the "fruit of the poisonous tree" into evidence, keeping out any evidence obtained from an unconstitutional search or seizure. <u>Wong Sun v. United States</u>, 371 U.S. 471, 485-88 (1963); <u>State v. Shaw</u>, 213 N.J. 398, 412-13 (2012). Exclusion does not turn on whether the illegal search or seizure was a "but-for" cause of the State obtaining the evidence a defendant seeks to be suppressed. <u>Shaw</u>, 213 N.J. at 413. Rather, courts hearing suppression motions must

determine whether the evidence "was a product of the 'exploitation of [the primary] illegality'—the wrongful detention—or of 'means sufficiently distinguishable to be purged of the primary taint.'" Ibid. (quoting Wong Sun, 371 U.S. at 488).

Hence, the exclusionary rule applies not only to evidence obtained "as a primary result of warrantless conduct, but as a consequence of it" as well. State v. Atwood, 232 N.J. 433, 449 (2018) (quoting State v. Holland, 176 N.J. 344, 353 (2003)). "During an illegal search, for example, the police might acquire information that leads to other evidence useful to prosecutors. Under that circumstance, the later-derived evidence might be suppressed or excluded as 'fruit of the poisonous tree.'" Ibid. (quoting Holland, 176 N.J. at 353).

In the present case, the trial court correctly determined that the police officers' initial stop of defendant and Young on the sidewalk was unconstitutional. As the court found, the officers lacked a reasonable suspicion that the two men had engaged in criminal activity. The court explained at length in its opinion why the information conveyed to and observed by the officers was inadequate to provide a reasonable basis to suspect that either defendant or Young recently had been selling or using drugs at the location reported by the anonymous tipster. See State v. Rodriguez, 172 N.J. 117, 126 (2002) (requiring

"specific and articulable facts" to support reasonable suspicion to justify a warrantless Terry stop).

Among other things, the tipster's vague and generic description of a single male dressed all in black selling drugs did not correspond with these two men, one of whom was wearing a red hoodie. The officers went to the location, more than an hour after the tip, and they saw no drug activity occurring. The mere fact that defendants walked away when the police drove by that location is not in itself indicative of criminality. State v. Ruiz, 286 N.J. Super. 155, 163 (App. Div. 1995) (noting such movement "signifies nothing more than behavior in fulfillment of a wish to be [] somewhere else").

Given these facts, the court's finding that the police illegally stopped defendant and Young on the sidewalk is consistent with the Supreme Court's recent opinion in State v. Nyema, __ N.J. __, __ (2022), which invalidated a warrantless stop of defendants based upon a vague description of their race and gender and their proximity to the scene of a recent robbery. Indeed, the State has not cross-appealed the trial court's determination of an illegal stop.

The State argued, and the trial court agreed, that defendant's flight after he was told by police to remain in place sufficiently attenuated the illegal stop from the evidence the police obtained after he fled. Our courts use a three-prong

analysis for determining if evidence is sufficiently attenuated from an unconstitutional stop to be admissible, including these factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." State v. Johnson, 118 N.J. 639, 653 (1990) (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).

The trial court's written opinion did not address these three attenuation factors. Instead, the court appears to have adopted a per se approach, concluding that defendant's disobedience of a police command broke the chain of causation and purged the taint of the illegal stop. However, that is not necessarily so.

To be sure, as the trial court recognized, in Crawley and Williams I, the Supreme Court held on the facts presented that a defendant's flight disobeying a police command to stop can attenuate the illegality of the stop and allow the State to charge such a defendant with obstruction of justice under N.J.S.A. 2C:29-1. Here, the indictment against defendant did not charge obstruction, but it did include a count for eluding law enforcement, N.J.S.A. 2C:29-2(a). We accept the State's argument, which the trial court adopted, that defendant could be guilty of eluding if his flight was not attenuated from the illegal stop on the sidewalk. However, our case law has not construed Crawley and Williams I to

express a per se rule that any flight by a defendant after an illegal police command to stop automatically requires the court to admit evidence derived from the ensuing chase.

In State v. Williams, 410 N.J. Super. 549 (App. Div. 2009) ("Williams II"), a case not cited in the trial court's opinion, we clarified that, at times, a defendant's disobedience of a police command to stop does not necessarily attenuate the fruits of a search occurring after such a defendant flees. In Williams II, the defendant was arrested for obstruction, in violation of N.J.S.A. 2C:29-1(a). Id. at 554. Police officers responded to a housing complex to provide a police presence to quell what they perceived to be a looming threat of retaliatory gun violence. Id. at 552. The defendant was riding his bicycle when he came upon the officers and looked startled. Ibid. He immediately started pedaling faster and turned away from them when he saw them. Id. at 553. Then an officer commanded him to stop. Ibid. He stopped pedaling when he saw more officers ahead of him, and the officer who ordered him to stop grabbed him by the arm four or five seconds after the initial command. Ibid. While in that officer's grasp, defendant threw a box containing drugs from his pocket to avoid detection. Ibid.

We ruled in Williams II that the officers lacked reasonable suspicion for the stop. Id. at 558. In analyzing the second attenuation prong, we found that "there were no significant intervening circumstances between the unlawful police command to defendant to stop his bicycle and defendant's discard of the box," id. at 563 (quoting Johnson, 118 N.J. at 653), despite the N.J.S.A. 2C:29-1(a) violation. We reasoned that Williams I was not factually on point because in that case—and the cases upon which the Supreme Court relied in reaching that decision—the defendant's flight was more violent or otherwise dangerous. Ibid. In requiring suppression in Williams II, we deemed it important that the "defendant did not force the officers to engage in a lengthy and dangerous pursuit to apprehend him or engage in any act of physical aggression against [the arresting officer]." Ibid.

Because the trial court in this case strayed from Williams II and instead used a per se approach to attenuation, we are constrained to remand for the court to analyze the evidence derived from the pursuit of defendant using the three-part test prescribed by case law. Specifically, the court should address and weigh: (1) the immediacy of defendant's flight, as shown on the video; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the alleged police misconduct.

11

In performing this analysis, the court should not rely on facts that it already deemed inadequate to support reasonable suspicion for the initial stop. We do not suggest any outcome, noting that either party may pursue appellate review if aggrieved by the trial court's remand decision. The trial court shall have the discretion to have the parties adduce additional testimony or proofs if that will aid it in its attenuation analysis.[2]

We vacate the denial of suppression and remand for reconsideration. We do not retain jurisdiction. Pending the outcome of the remand proceedings, defendant's conviction and sentence shall remain undisturbed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] We agree with defendant that the search-incident-to-arrest doctrine does not authorize the seizure of the gun, which was not on defendant's person or near him when he was arrested. State v. Eckel, 185 N.J. 523, 530 (2006) (quoting Chimel v. California, 395 U.S. 752, 763 (1969)) (limiting the search-incident-to-lawful-arrest exception to searches of the area "within [the] immediate control" of the arrestee at the time of the arrest). Nor can the State on remand rely on a theory that the gun was abandoned, as that theory has not been briefed on appeal by the State. See Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (treating such a failure to brief an argument as a waiver).