**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1871-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DESHAWN F. BANKS,

     Defendant-Appellant.

_____

Submitted January 14, 2026 – Decided March 26, 2026

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-03-0704.

Ronald B. Thompson, PC, attorney for appellant (Amanda DeVault, of counsel and on the brief; Ronald B. Thompson, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel M. Lamb, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Deshawn F. Banks appeals from the July 7, 2022 order denying his motion to suppress evidence after an evidentiary hearing. We affirm, substantially for the reasons set forth by Judge David M. Ragonese in his written statement of reasons.

I.

We discern the salient facts from the record established at the June 21, 2022 suppression hearing. The State called Camden County Police Officer Matthew Napoli to testify and moved footage of Officer Napoli's body-worn camera (BWC) into evidence, along with photographs of the location of defendant's arrest and the weapon recovered.[1] Defendant testified on his own behalf.

At 12:40 a.m. on March 15, 2021, Officer Napoli was dispatched to "El Recodo," a bar in Camden, in response to a 9-1-1 report that one of "four or five individuals . . . wearing all black" possessed a firearm. Officer Napoli and others arrested one individual at El Recodo but they did not recover a weapon. Following that arrest, the investigation stemming from the 9-1-1 report was closed.

---

[1] We have reviewed the BWC footage and photographs in evidence before the trial court, after providing counsel additional time to comply with our sua sponte orders requiring their submission.

A-1871-23

Officer Napoli was then directed to conduct "bar and park checks," which are hourly surveillance checks for "certain bars and parks throughout the [C]ity [of Camden] due to the[] known crime that happens in those areas." When conducting these checks, officers are to "[l]ook for anything that might be out of the ordinary."

At around 1:40 a.m., Officer Napoli—in uniform and inside a marked police vehicle—entered "Utah Park"[2] (the Park) which he described as "a small park, dark, [and in] a high-crime area known for shootings and narcotic-related offenses." There is an entrance to the Park across the street from El Recodo.

Upon driving into the Park, Officer Napoli turned on the police vehicle's "takedown lights"—bright illuminating lights used to "light up a dark area." Officer Napoli observed a "male wearing all dark clothing"—later identified as defendant—who "started running away." Officer Napoli followed defendant in his vehicle.

As defendant ran, Officer Napoli observed defendant grab his waistband and then, after running out of the Park, duck behind a white vehicle parked in a driveway. Officer Napoli made the decision to stop defendant because, in his experience, when someone grabs their waistband, that action indicates possession of a "firearm."

---

[2] The record refers to the park as both "Utah Park" and "Eutaw Park."

A-1871-23

Upon instructing defendant to show his hands, Officer Napoli observed defendant "shaking down at his waistband and looking down." Defendant then came out from behind the white vehicle and surrendered with his hands up. Officer Napoli approached defendant and saw a black handgun on the ground near defendant's feet. Crime scene investigators later recovered the firearm, a Walther PK380 loaded with ammunition.

On March 15, 2022, a Camden County grand jury charged defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). Defendant moved to suppress the handgun recovered at the scene of his arrest.

At the suppression hearing, defendant did not dispute that he was in the Park during those early morning hours but asserted he had left his friend's house and was on his way to meet a girl. Defendant stated while he was walking through the Park he saw lights, and because he did not know who was driving, he ran until he was "out of breath," crouching behind the white vehicle. Defendant testified Officer Napoli then got out of the police car with his firearm drawn, told him to stand up with his hands raised, and arrested him.

After hearing oral argument, the judge denied defendant's suppression motion, setting forth findings of fact and conclusions of law in a written statement of reasons. The judge found Officer Napoli's BWC footage corroborated his testimony. The judge found defendant's testimony was not

credible "because he immediately became defensive on cross[-]examination and did not want to answer the questions posed by the State" and "was unable to provide specific answers[] and took long pauses between answering the questions."

The judge concluded that "the investigatory stop of defendant occurred when Officer Napoli stepped out of his vehicle with his firearm drawn." The judge found under the totality of the circumstances, Officer Napoli had a "particularized suspicion" sufficient to lawfully stop defendant because defendant was "grabbing at his waistband" while running and Officer Napoli observed defendant matched the description of the individual possessing a firearm at El Recodo, which is across the street from the Park.

The judge also concluded that the seizure of the firearm comported with prevailing law because it was in Officer Napoli's plain view on the ground by defendant's feet, and there were no facts to suggest that defendant was in lawful possession of the firearm. He found Officer Napoli was lawfully on the driveway where the weapon was recovered due to his "hot pursuit" of defendant. The judge also reasoned that the exigent circumstances exception to the warrant requirement justified seizure of the firearm.

A-1871-23

Defendant pleaded guilty to the charge and was sentenced to three years' incarceration with one year of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

Defendant raises the following points for our consideration:

> I. THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE THE STATE LACKED PARTICULARIZED SUSPICION TO JUSTIFY THE INVESTIGATORY STOP.
>
> II. THE PLAIN VIEW DOCTRINE DOES NOT JUSTIFY THE SEIZURE BECAUSE THE INITIAL ENCOUNTER WAS UNLAWFUL.

## II.

### A.

The Supreme Court recently reiterated the well-settled law governing our review of a trial court order deciding a motion to suppress evidence, stating:

> When appellate courts review the grant or denial of a motion to suppress, they "must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). Only when factual findings "are clearly mistaken" can they be set aside. Ibid. "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." State v. Dunbar, 229 N.J. 521, 538 (2017).
>
> [State v. Caneiro, 262 N.J. 288, 300 (2025) (citations reformatted).]

"'An appellate court should not disturb the trial court's findings merely because "it might have reached a different conclusion were it the trial tribunal" or because "the trial court decided all evidence or inference conflicts in favor of one side" in a close case.'" State v. Nelson, 237 N.J. 540, 551 (2019) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "'The governing principle, then, is that "[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction."'" Id. at 551-52 (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

## B.

We discern no error in the judge's denial of defendant's suppression motion because the investigatory stop and the seizure of the handgun were both lawful under prevailing constitutional principles.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." Caneiro, 262 N.J. at 300 (quoting State v. Smart, 253 N.J. 156, 164 (2023)). Searches and seizures "without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." Ibid. (internal quotation marks omitted). "[T]o overcome that presumption under both constitutions, the State must show by a

preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement."  Ibid.

"Those exceptions include investigatory stops, also known as Terry stops after the landmark United States Supreme Court decision, Terry v. Ohio, 392 U.S. 1 (1968)."  State v. Alessi, 240 N.J. 501, 517-18 (2020).  "[A]n investigatory stop is an exception justified only by reasonable suspicion of involvement in a crime."  Id. at 523-24.  Although the "[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest," State v. Stovall, 170 N.J. 346, 356 (2002), police must have "some minimal level of objective justification for making the stop."  State v. Nishina, 175 N.J. 502, 511 (2003) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).  Thus, "[a]n investigative stop or detention does not offend the Federal or State Constitution, and no warrant is needed, 'if it is based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal activity.'"  State v. Goldsmith, 251 N.J. 384, 399 (2022) (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry, 392 U.S. at 21)).

To determine whether reasonable, articulable suspicion exists for an investigatory stop, trial courts must conduct a highly fact-sensitive inquiry, evaluating "the totality of the circumstances surrounding the police-citizen

A-1871-23

encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." Ibid. (internal quotation marks omitted). No one fact is issue-dispositive on what constitutes reasonable and particularized suspicion to conduct a stop. See id. at 400 (stating residents of a high-crime area do not possess lesser constitutional protection from police interactions); see also Nishina, 175 N.J. at 511 (stating "[f]acts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate").

Our well-settled jurisprudence informs our conclusion that the judge engaged in the requisite fact-specific inquiry based on the totality of the circumstances. The judge did not impermissibly rely solely on the closed investigation into the 9-1-1 caller's report of criminal activity at El Recodo to find the investigatory stop comported with Terry. See State v. Nyema, 249 N.J. 509, 531-32 (2022); State v. Caldwell, 158 N.J. 452, 460 (1999). Nor did the judge rely only on defendant's flight from Officer Napoli's vehicle as he ran through the Park. See State v. Tucker, 136 N.J. 158, 168-69 (1994). Instead, the judge evaluated the circumstances in their totality based on Officer Napoli's credible testimony. The judge reasoned Officer Napoli had reasonable suspicion that defendant was engaged in criminal activity because

defendant matched the description of one of the criminal actors reported by the 9-1-1 caller to be at El Recodo across the street from the Park, the event took place an hour after the arrest at El Recodo, and defendant ran away from the marked police vehicle while grabbing at his waistband.

There is sufficient, credible evidence in the record to support the judge's conclusion that Officer Napoli had reasonable, articulable suspicion to conduct an investigatory <u>Terry</u> stop of defendant under well-established constitutional principles.

C.

We are unconvinced that Officer Napoli's seizure of the firearm from the ground near defendant's feet when he was stopped was unlawful. On the contrary, the seizure was authorized under the plain-view exception to the warrant requirement.

"Under the plain-view doctrine, the constitutional limiting principle is that the officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime." <u>State v. Williams</u>, 254 N.J. 8, 45 (2023) (emphasis omitted) (quoting <u>State v. Gonzales</u>, 227 N.J. 77, 101 (2016)). Officer Napoli observed the handgun in plain view on the ground near defendant's feet during a lawful <u>Terry</u> stop. Because the credible evidence

A-1871-23

established that Officer Napoli could observe the suspected firearm lying next to defendant's feet on the driveway, we are unconvinced the judge erred in finding the plain view exception to the warrant requirement legalized the seizure.

We have carefully considered the remainder of defendant's contentions in view of the applicable law and the record and conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division